PEOPLES SAVINGS BANK ET, PLAINTIFFS, *v.* PLAYDIUM LANES, INC., A CORP., DEFENDANT.

Common Pleas Court, Van Wert County.

No. 21805. Decided February 4, 1964.

*Messrs. S. S. Beard* and *James W. Childs, Beard & Childs*, for plaintiff.

*Messrs. Charles E. Baldwin* and *Perry G. Wise,* for defendants.

McNEILL, J.  The Playdium Lanes, Inc., a corporation, in 1962 had opened an account at the Peoples Savings Bank. The signature card, covering all transactions, indicated that the account should be signed by any two officers, the president, vice president, or treasurer.  Checks were usually stamped, "Pay to the Order of Playdium Lanes, Inc." with no signature being placed thereon; the checks then were placed in the bag and deposited in the account.  The bank placed a certain designated amount of change in the bag for the registers.

In July, 1962, one Detwiler was working for Playdium, and one Self was Vice President and was named on the signature card.  Self called Detwiler and told him to take a check which had been received that day and to cash it.  Detwiler endorsed the check, Playdium Lanes, per himself, and got the money and took it back to the bowling alley.  When Self came in that evening, Detwiler gave the money to Self.  About a month later, Self was discharged, in August.  Because of a change-over in accountants, it was not until January that it was determined that the account was short this $500.00.

Both sides claim that this case is controlled by *Butler Produce and Canning Company* v. *Edgerton State Bank*, 91 Ohio App., 385.  However, before considering this case, one other matter should be examined.

This is not a forged instrument.  It may be an unauthorized instrument, and the bank may be liable on an unauthorized instrument as well as a forged one.  There was no intent to defraud on the part of Detwiler.  He was told by a vice president of the corporation, his immediate superior, to take the action that he did.  All officers of the corporation had indicated to him, he, of course, not being controlled by the signature card, that Self was in charge and was running the bowling alley.  Therefore, from Detwiler's standpoint, he did only what any agent of the corporation would do; that is, followed the orders of a superior and obtained the money.

At the time Detwiler received the money, he took it immediately back to the Van Wert office of the corporation and placed it in the files, awaiting Self's return. When Self returned, Detwiler then gave the money to him. Self stated he was putting it in petty cash and showed it to others for at least two or three days.

Was Self guilty of embezzlement? Detwiler obtained it as corporation money and gave it to Self as corporation money. Self accepted it and stated it was for petty cash. Thus, it came into his possession as corporation money. If he then made off with it, it would be embezzlement. If it were otherwise, he might be guilty of no crime whatsoever.

It may be true that Self had the intention to embezzle the money at the time he called Detwiler; but intention is not sufficient to constitute a crime. The embezzlement was complete only when he accepted the money from Detwiler and then appropriated it to his own use.

Therefore, whether or not the bank could be liable is immaterial, as there was no damage as a result of this check. Five hundred dollars may have been improperly withdrawn from the corporate funds; but the five hundred dollars was returned immediately to the corporation. The fact that it was thereafter embezzled does not change the fact that the corporation had received the money.

This is a case of one person defaulting and one of two innocent persons must suffer. In this case, the bank may have been careless; but the corporation may have been more careless in hiring Self. He was their officer; he gave the directions. The Bank had dealt with Detwiler and its employees believed him to be honest, which he was. The bank may foresee that if a check is wrongfully cashed the person presenting it may make off with the money. They aren't required to foresee that money, even if incorrectly paid out, is returned to the corporation that a vice president will embezzle it.

A Journal Entry in accordance herewith may be prepared and submitted to the Court.